UNITED STATES v. ERIE R. CO.

(Circuit Court, W. D. New York. July 5, 1911.)

No. 316.

CARRIERS (§ 37*)—CARRIAGE OF LIVE STOCK—28-HOUR LAW—CONSTRUCTION.

Unless cars provided for the carriage of cattle afford sufficient space for all to lie down at the same time, they are not sufficient to exempt the carrier from unloading for rest, water, and feeding under 28-Hour Law June 29, 1906, c. 3594, § 3, 34 Stat. 608 (U. S. Comp. St. Supp. 1909, p. 1179.)

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 95, 927; Dec. Dig. § 37.*

Liability of carrier for failure to feed, water, and rest live stock and for violation of 28-hour law, see note to St. Joseph Stockyards Co. v. United States, 110 C. C. A. 435.]

Action for penalty by the United States against Erie Railroad Company. Judgment for plaintiff.

John Lord O'Brian, U. S. Atty.

Moot, Sprague, Brownell & Marcy (John W. Ryan, of counsel), for defendant.

HAZEL, District Judge. This is an action to recover penalty under section 3 of the act of June 29, 1906, which provides for imposing a penalty for failure to unload, for rest, water, and food, cattle transported interstate. It is admitted that within the lawful period the animals were given proper food and water at the stockyards at Suspension Bridge before delivery was made to the defendant carrier. The single question presented for decision is whether the cattle had proper opportunity to rest within the period of 28 hours or within the extension period—36 hours.

The shipment was from Chicago, Ill., to Kearney, N. J., and the time was 65 hours and 10 minutes, excluding the time consumed in loading. The cars were 36 feet long and 8 feet 7 inches wide. Evidence is given by the government showing that cattle weighing 1,300 pounds occupy a space of 36 inches in width when lying down, and that the average steer weighs between 1,200 and 1,300 pounds. It is shown that in car 8800 were confined 15 bulls tied alternately head and tail weighing on an average 1,477 pounds; that in car 8054 were confined 14 cattle weighing on an average 1,311 pounds each, and 3 large sized cattle weighing on an average 1,477 pounds each; that in car 8188 were confined 16 cattle weighing on an average 1,311 pounds each; and in car 8014 18 cattle were transported weighing on an

_____

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

average 1,270 pounds each. It was proven that an animal weighing from 1,200 to 1,300 pounds measures from 19 to 21 inches across the hips and somewhat more when measured across the abdomen. Some of the cattle were measured by the witness Hamilton, who testified that those measured while lying down and which weighed about 1,300 pounds occupied a car space of 36 inches in width. Dr. Wende testified that an average steer lying down required car space approximating from 32 to 36 inches. Other witnesses for the government testified that the minimum space in width that should be allowed each steer of average size would be not less than 2 feet and 6 inches. Such opinion by the government inspectors finds corroboration in the rules and regulations of the government providing for space in the export transportation of cattle.

The defendant gave testimony to show that the habits of cattle in transportation are such that they would not all lie down at the same time, and therefore it is urged that it was unnecessary and is unreasonable to require loading a car so that all the animals confined therein could lie down and rest at the same period of time.

The principal dispute between the government and the defendant is whether the cars used in the transportation were strictly required to contain sufficient space to permit all the animals to lie down at the same time, or whether it was a sufficient compliance with the statute to load the car on the assumption that customarily all the animals will not lie down at the same time. It is conclusively shown that none of the cars used for the shipment afforded sufficient space for all the animals to lie down at the same time. The requirements of the statute providing for giving opportunity to rest are not unreasonable, and in my opinion a fair construction requires that the space allowed each animal shall be such as to permit him to lie down ad libitum. U. S. v. New York Central & Hudson River R. R. Co. (C. C.) 186 Fed. 541; U. S. v. New York Central & Hudson River R. R. Co., 191 Fed. 938, decided to-day by this court. The cars should not be overloaded, and, if it occurs that sufficient space has not been provided so as to enable all the animals to lie down at the same time, the carrier must unload the cars at the expiration of 28 or 36 hours to comply with the law, which manifestly was passed out of motives of humanity as well as to insure the wholesomeness of the food after the animal is slaughtered.

The government may have judgment herein for the penalty demanded, with costs.